IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ALLISON ULLO, *individually and on behalf of others similarly situated*,

                    Plaintiff,

     vs.

ABY ROSEN, GREGG POPKIN, PATRICK HALL, DANE ASERMELY, SEBASTIAN LEFAVRE, RFR HOLDING LLC, GPH PARTNERS LLC, GPH MANAGEMENT LLC, and GP SERVICES LLC,

                  Defendants.

No. 18 Civ. 11281 (PAE)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT OR STRIKE CERTAIN CLASS ALLEGATIONS**

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

THE COMPLAINT ............................................................................................................... 2

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.     THE COMPLAINT FAILS TO ALLEGE EMPLOYER LIABILITY FOR ANY
DEFENDANT............................................................................................................... 6

     A.    Plaintiff's vague and undifferentiated allegations against the Corporate
Defendants are insufficient to establish single employer liability .......................... 7

     B.    Allegations of ownership and corporate membership fall far short of pleading
joint employer liability as to the Individual Defendants........................................ 9

     C.    Defendants Asermely and Lefavre cannot be liable as employers because they are
merely employees themselves.............................................................................. 11

II.    PLAINTIFF'S CLASS ACTION CLAIMS SHOULD BE DISMISSED, OR IN THE
ALTERNATIVE, HER RULE 23 FLSA ALLEGATIONS SHOULD BE STRICKEN. 12

CONCLUSION.................................................................................................................. 15

## Table of Authorities

<u>**Cases**</u>

*Arculeo v. On–Site Sales & Mktg., LLC,*
  425 F.3d 193 (2d Cir. 2005) ...................................................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................ 4, 5

*Bowling v. Johnson & Johnson*,
  No. 17-cv-3982, 2018 WL 1587598 (S.D.N.Y. Mar. 28, 2018)............................... 12

*Bravo v. Established Burger One, LLC*,
  No. 12-cv-9044, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013).................................... 8

*Carter v. Dutchess Cmty. College,*
  735 F.2d 8 (2d Cir. 1984) .................................................................................. 6, 8, 9

*Charles v. Nationwide Mut. Ins. Co.*, Inc.,
  No. 09-cv-94, 2010 WL 7132173 (E.D.N.Y. May 27, 2011).................................... 13

*Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*,
  No. 17-cv-4058, 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018)................................ 11

*Clinton's Ditch Coop. Co. v. NLRB,*
  778 F.2d 132 (2d Cir. 1985) ...................................................................................... 6

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................... 13, 14

*Dziennik v. Sealift, Inc.*,
  No. 05-cv-4659, 2006 WL 1455464 (E.D.N.Y. May 23, 2006)................................ 14

*Goldberg v. Whitaker House Coop., Inc.*,
  366 U.S. 28 (1961)...................................................................................................... 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ................................................................................ 12

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013) ....................................................................................... 10

*Jean-Louis v. Metro. Cable Comm'ns, Inc.*,
  838 F. Supp. 2d 111 (S.D.N.Y. 2011) ........................................................................ 9

*Johnson v. Pugh*,
No. 11-cv-385, 2013 WL 3013661 (E.D.N.Y. June 18, 2013) .................................................. 2

*LaChapelle v. Owens-Illinois, Inc.*,
513 F.2d 286 (5th Cir. 1975) ................................................................................................... 13

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) .................................................................................................... 12

*Moses v. Griffin Indus., LLC,*
No. 18-cv-1200, 2019 WL 1315938, (S.D.N.Y. March 22, 2019) ............................................ 5

*Nichols v. Mahoney,*
608 F. Supp. 2d 526 (S.D.N.Y.2009) ....................................................................................... 12

*Olvera v. Bareburger Group LLC*,
73 F. Supp. 3d 201 (S.D.N.Y. 2014) ..................................................................................... 3, 6

*People v. Ullo*,
Index No. 2018-NY-014868 ...................................................................................................... 2

*Perez v. Westchester Foreign Autos, Inc.*,
No. 11-cv-6091, 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013) ............................................. 7, 8

*Popat v. Levy*,
253 F. Supp. 3d 527 (W.D.N.Y. 2017) ................................................................................. 8, 9

*Rudkowski v. MIC Network, Inc*.,
No. 17-cv-3647, 2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018)................................................ 5

*Ruggles v. Wellpoint, Inc.*,
253 F.R.D. 61 (N.D.N.Y. 2008) .............................................................................................. 13

*Rutherford Food Corp. v. McComb,*
331 U.S. 722 (1947)................................................................................................................... 9

*Salinas v. Starjem Rest. Corp.*,
123 F. Supp. 3d 442 (S.D.N.Y. 2015) ..................................................................................... 11

*Serrano v. I. Hardware Distrib., Inc.*,
No. 14-cv-2488, 2015 WL 4528170 (S.D.N.Y. July 27, 2015)............................................... 11

*Shmueli v. City of New York*,
424 F.3d 231 (2d Cir. 2005) ...................................................................................................... 2

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S.Ct. 1036 (2016)............................................................................................................... 13

*Vasto v. Credico (USA) LLC*,
  No. 15-cv-9298, 2016 WL 4147241 (S.D.N.Y. Aug. 3, 2016) ...................................... 8,10, 11

*Young v. Cooper Cameron Corp.*,
  586 F.3d 201 (2d Cir. 2009) ...................................................................................... 6

**<u>Statutes</u>**

29 U.S.C. § 203, *et seq.* ....................................................................................... *passim*

29 U.S.C. § 255 ................................................................................................. 6

29 U.S.C. § 216(b) ............................................................................................ 12

New York Labor Law §§ 190, 650, *et seq.* ............................................................... 4

**<u>Rules</u>**

29 C.F.R. § 791.2(a) ......................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 4, 14

Fed. R. Civ. P. 12(f) ........................................................................... 1, 12, 13, 14

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), the above-named defendants respectfully submit this memorandum of law in support of their motion to dismiss the complaint or strike certain class allegations.

## PRELIMINARY STATEMENT

Allison Ullo worked as a cocktail waitress at the Rose and Jade Bars for more than eight years.  In an industry where it is common for staff to move jobs frequently, Ullo stayed at the Rose and Jade Bars because, among other things, she was well-treated and well-compensated. Ullo in fact trained many of the current cocktail waitresses, including about the same tip-sharing policies that she now claims she had no notice of and were forced upon her.  Ullo was fired just over a year ago, after she was caught dealing drugs to an undercover NYPD officer at the Bars, and subsequently filed this lawsuit.

Ullo's claims have absolutely no basis in reality.  The defendants appreciate that the factual truth or falsity of her allegations is an issue for another day.  But – presumably precisely because her Complaint is based upon false allegations – Ullo's Complaint is devoid of any factual allegations that would plausibly entitle her to relief.  In particular, although the Complaint names nine different corporate entities and individuals as defendants, the Complaint contains no allegations that would allow the Court to infer that these people and entities were her employers. Instead, she has apparently named every entity and person in any way related to the Gramercy Park Hotel, in which the Bars are located, and then asserted in true boilerplate fashion – and without differentiating amongst them – that they were her employers.  These allegations are insufficient as a matter of law, and require the dismissal of this case.

In addition, the Complaint purports to seek relief for Fair Labor Standards Act violations using the class action mechanism available under Federal Rule of Civil Procedure 23.  This is contrary to law, as the FLSA has its own collective action mechanism, which is the exclusive

procedure in FLSA cases.  Accordingly, these FLSA-Rule 23 allegations are "impertinent or immaterial" and should be stricken to the extent the Court does not dismiss this case in its entirety.

## THE COMPLAINT

Allison Ullo worked as a waitress at the Rose and Jade Bars (the "the Bars") located within the Gramercy Park Hotel in Manhattan.  Compl. ¶ 6.

She worked there for more than eight years, from late 2009 until March of 2018, *see id.*, when she was terminated following her arrest for selling cocaine to an undercover New York Police Department officer in the Bars.[1]  This lawsuit followed.

---

[1]   *See People v. Ullo*, Index No. 2018-NY-014868.  Ullo was charged with criminal possession of a narcotic drug with intent to sell it and criminal possession of a controlled substance and subsequently pleaded guilty to criminal possession of a controlled substance in the seventh degree.  Defendants provide this information for background – so the Court can understand the circumstances under which one of the Bars' longest-tenured cocktail waitresses would turn around and sue based on false allegations – although, to the extent relevant to this motion, the Court may certainly take judicial notice of Ullo's arrest and guilty plea.  *See, e.g.*, *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) ("The New York State prosecution of Shmueli is a matter of public record, of which we take judicial notice."); *Johnson v. Pugh*, No. 11-cv-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("Here, the Court finds it proper to take judicial notice of plaintiff's guilty plea, conviction, and sentencing as a matter of public record without converting defendant's motion to one for summary judgment.").

The Complaint asserts two different types of wage law violations.[2]   First, it claims that

there were irregularities with respect to tips.  Compl. ¶¶ 50-56.  In particular, Ullo alleges that

_____

[2]      Unless otherwise stated, the allegations in this section are drawn from the Complaint
(ECF No. 1).  Many of these allegations are patently false.  For example:

- The Complaint alleges that only cocktail waitresses at that Bars share their tips, and that
  the bartenders do not.  *See* Compl. ¶¶ 40, 49, 50.  In fact, the bartenders do share their
  tips.

- The Complaint likewise alleges that only female employees share their tips, and that men
  do not.  *See id.* ¶¶ 50-51, 54.  Again, this is totally false.  Although all of the cocktail
  waitresses are currently women, male employees – bartenders – also share their tips.

- The Complaint alleges that female employees were "required to distribute tips on the
  stated ground that '[y]ou girls make too much money' or other similar reasons," that such
  "employer –mandated tip sharing scheme imposed on Plaintiff and other waitresses is not
  customary" and that the tip sharing was not "reasonable."  Compl. ¶¶ 51-56.  This is
  completely false.  Tip-sharing of the sort alleged in the Complaint is entirely
  commonplace in the service industry, and recognizes the fact that the immediate tip-
  earner (waitresses or, for patrons who are served at the bar, bartenders) is only able to do
  his or her job with the help of others (bartenders and barbacks).

- The Complaint alleges that "Defendants did not post in a conspicuous place notices
  issued by the Department of Labor about wage and hour laws, tip appropriations, or
  illegal deduction provisions."  Compl. ¶ 58.  Not so.  At all relevant times, such notices
  were prominently displayed to all staff.

- The Complaint alleges that cocktail waitresses are "required to engage in pre-shift
  donning of uniforms as well as preparing her hair and make-up[.]"  Compl. ¶ 42.  But this
  allegation fails to include the critical fact that waitresses are supposed to clock in before
  they change, and are compensated for the time they take getting dressed in their uniform.

- The Complaint alleges that cocktail waitresses "are also required to assist in the
  paperwork by phone with the floor managers on Sunday afternoon" and that such work is
  "non-compensated." Compl. ¶ 48.  This is false.  There is no such Sunday work.  At
  most, one or twice a year, there will be meetings for the entire staff of the Bars on
  weekends.  When that occurs, staff are supposed to clock in, and are paid for their time.

Although these allegations and many others in the Complaint are provably false, they are
assumed to be true for purposes of this motion.  *See Olvera v. Bareburger Group LLC*, 73 F.
Supp. 3d 201, 204 (S.D.N.Y. 2014).

3

cocktail waitresses were required to share their tips with non-waitresses, including bartenders, barbacks, and "back of the house" kitchen staff, while non-waitresses were not required to share their tips with others. *Id*. She further alleges that the "employer-mandated tip sharing" was gender-based, in that only female employees were required to share their tips, whereas no male employees were required to do so. *Id.* ¶¶ 49-50. Moreover, Ullo alleges that an unlawful tip credit was applied to her wages. *Id.* ¶¶ 74, 79, 84, 93, 96.

The Complaint's second set of allegations relate to record keeping. It alleges that no proper records of tips were kept or preserved. *Id.* ¶ 57. Ullo also claims that pay statements were incorrect, *id.* ¶ 60, and that one defendant, GPH Management LLC, was improperly left off notices and records, *id.* ¶ 59, while the name and contact information of her employer was not provided to her in any written notice, *id.* ¶ 98. Further, Ullo alleges that notices issued by the Department of Labor about wage and hour laws, tip appropriations, and illegal deductions were not posted in a conspicuous place. *Id.* ¶ 58.

Based upon these factual allegations, the Complaint asserts ten causes of action: four purported violations of the Fair Labor Standards Act, 29.U.S.C. § 203, *et seq.* ("FLSA"), and six purported violations of the New York Labor Law §§ 190, *et seq.* and 650, *et seq.* ("NYLL"). The Complaint names four corporate entities as defendants: RFR Holding LLC ("RFR"), GPH Partners LLC ("GPH Partners"), GPH Management LLC ("GPH Management"), and GP Services LLC ("GP Services," and collectively the "Corporate Defendants"). The Complaint also names five individual defendants: Aby Rosen, Gregg Popkin, Patrick Hall, Dane Asermely, and Sebastien Lefavre (collectively, the "Individual Defendants").

Out of all of these defendants, the Complaint includes factual allegations concerning only GP Services' role as an employer. In particular, Ullo alleges that GP Services was listed as her

employer on her pay statements and W2 forms.  *Id.* ¶¶ 17, 62.  Other than GP Services, the Complaint contains no factual allegations as to the asserted role the remaining defendants played in her employment.  The Complaint also does not identify any of the defendants as her primary employer, and instead claims that the Corporate Defendants "constitute a single employer," *id.* ¶ 19, and that the Corporate Defendants together with the Individual Defendants "jointly employed" her, *id.* ¶ 35.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

Although a complaint need not provide "detailed factual allegations," it must nevertheless assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S at 555.  Such legal "labels and conclusions" should be disregarded by the Court, *Rudkowski v. MIC Network, Inc*., No. 17-cv-3647, 2018 WL 1801307, at *2 (S.D.N.Y. Mar. 23, 2018), and the remaining factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S at 555. (internal citations omitted).

## ARGUMENT

## I.      THE COMPLAINT FAILS TO ALLEGE EMPLOYER LIABILITY FOR ANY DEFENDANT

"To be held liable for violations of the FLSA, a defendant must be an employer of the plaintiff alleging those violations."  *Moses v. Griffin Indus., LLC,* No. 18-cv-1200, 2019 WL 1315938, at *3 (S.D.N.Y. March 22, 2019).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Second Circuit has articulated a four-factor test for determining whether an employment relationship exists for FLSA purposes: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. College,* 735 F.2d 8, 12 (2d Cir. 1984).  "The statutory standard for employer status under NYLL is nearly identical to that of the FLSA." *Olvera*, 73 F. Supp. 3d at 206.

The Complaint fails because its allegations are insufficient to establish employer liability under any of the various theories it proffers.[3]

---

[3]      Plaintiff also fails to plead that Defendants' alleged FLSA violations are in any way willful.  Absent proof of willfulness, there is a two year statute of limitations for any FLSA claim.  *See* 29 U.S.C. § 255 (FLSA actions "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").  An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."  *Young v. Cooper Cameron Corp*., 586 F.3d 201, 207 (2d Cir. 2009) (internal citations omitted).  It is the Plaintiff's burden to show willfulness, and "mere negligence is insufficient."  *Id.*  Plaintiff fails to meet this standard, as the Complaint is devoid of any allegations from which willfulness can be inferred on any of the alleged FLSA violations.  As a result, FLSA claims that accrued earlier than two years prior to the filing of the Complaint should be dismissed as time-barred.

A.  **Plaintiff's vague and undifferentiated allegations against the Corporate Defendants are insufficient to establish single employer liability**

Plaintiff's first theory of employer liability is that the Corporate Defendants are a single employer.  Although only GP Services issued her payments and tax information, Ullo claims that all four Corporate Defendants collectively employed her—despite no mention in the Complaint of the specific employment functions the remaining three defendants performed.

A "single employer" situation exists where two or more nominally separate entities are actually part of a single integrated enterprise.  *Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 137 (2d Cir. 1985).  The typical examples are "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management," where the nominally distinct entities can be deemed to constitute a single enterprise.  *Perez v. Westchester Foreign Autos, Inc.*, No. 11-cv-6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013).  "[U]nder this theory . . . an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  *Arculeo v. On–Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005).  "In determining whether multiple defendants constitute a single employer, courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control."  *Perez*, 2013 WL 749497, at *7.

In support of her single-employer theory, the Complaint alleges that three of the Corporate Defendants (GPH Partners, GPH Management, and RFR) are based in New York, while one (GP Services) is a Delaware corporation.  *See* Compl. ¶¶ 8, 10, 13, 16.  It alleges that the three New York-based Corporate Defendants were in some way connected to Aby Rosen, *see*

7

*id.* ¶¶ 8, 10, 14 (alleging that Rosen had historically "established" or "founded" these entities), and the Gramercy Park Hotel, *see id.* ¶¶ 9, 11, 15; *see also id.* ¶ 12 (alleging that GPH Management "does business under the name Gramercy Park Hotel"). Finally, the Complaint alleges that the Corporate Defendants were formed at separate times, nearly 20 years apart. *See id.* ¶¶ 8, 10, 14, 16 (alleging that the Corporate Defendants were established in 1991, April 2004, April 2005, and October 2009). Based on these assertions, Plaintiff then offers the legal conclusion that collectively, the four Corporate Defendants "constitute a single employer . . . given the (1) interrelation of operations, (2) centralized control of labor relations; (3) common management; and (4) common ownership and financial control." Compl. ¶ 19.

These allegations are insufficient as a matter of law. As a threshold matter, the allegations fail to plausibly establish that any of the four Corporate Defendants, alone or together, are Plaintiff's employer under the *Carter* factors. 735 F.2d at 12. Missing is any mention of hiring and firing, setting of schedules, keeping of business records, training, or (except with respect to GP Services) payment.

Second, Plaintiff's core "single-employer" allegations were copied verbatim from the applicable legal standard. *Compare* Compl. ¶ 19, *with Perez*, 2013 WL 749497, at *7. Courts routinely reject such conclusory pleadings that "merely recite[] the four factors for the single employer doctrine, unaccompanied by any factual allegations to support that theory." *Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017); *see also Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-cv-4058, 2018 WL 6655607, at *3 (S.D.N.Y. Dec. 19, 2018) (rejecting complaint that "principally relies on conclusory, boilerplate allegations of the elements of a single integrated enterprise . . . without any factual support"); *Bravo v. Established Burger One, LLC*, No. 12-cv-9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) ("mere boilerplate

allegations that [a defendant] meets the various prongs of the [employer] test are insufficient to survive a motion to dismiss" (collecting cases)).

Finally, the allegations are entirely undifferentiated as between each entity, repeatedly lumping the four "Corporate Defendants" together, thus failing to provide fair notice of the basis for this theory of liability.  *See Vasto v. Credico (USA) LLC*, No. 15-cv-9298, 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) (rejecting "undifferentiated" employer allegations and dismissing complaint with prejudice).

### B. Allegations of ownership and corporate membership fall far short of pleading joint employer liability as to the Individual Defendants

The Complaint also contends that the Individual Defendants and Corporate Defendants were Ullo's joint employers. Yet the entire basis for this assertion, with respect to the Individual Defendants, is a series of allegations regarding corporate ownership, combined with conclusory legal labels.  Thus, it fails for the same reasons as her single-employer theory.

A person may simultaneously have multiple "employers" for purposes of the FLSA, in which case, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]."  29 C.F.R. § 791.2(a).  The determination of whether defendants are a plaintiff's joint employers is based on "the circumstances of the whole activity," *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947), viewed in light of "economic reality," *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961).  Courts typically look to the four factors identified in *Carter* as "particularly relevant to the joint employment inquiry."  *Jean-Louis v. Metropo. Cable Comm'ns, Inc.*, 838 F. Supp. 2d 111, 122 (S.D.N.Y. 2011).  Unlike the single-employer scenario with parents and subsidiaries, joint employers are "separate legal entities, but . . . they handle certain aspects of their employer-employee relationship jointly."  *Popat*, 253 F. Supp. 3d at 538. (internal citation omitted).

For three of the Individual Defendants—Rosen, Popkin, and Hall—the main substantive allegations are that they are owners or officers of some of the Corporate Defendants.  *See* Compl. ¶¶ 21, 23, 26, 28.  In addition, the Complaint offers the identical legal conclusion that each "possessed operational control over and controls significant functions of the Defendant Corporations," (*id.* ¶¶ 21, 24, 28), and that each "possessed the power and authority to fire and hire employees at Rose Bar and Jade Bar, determine their rate and method of pay, determine their work schedules and otherwise affect the quality of their employment."  *Id.* ¶¶ 22, 25, 29.

These allegations are insufficient to establish joint employer liability.  "Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees."  *Vasto*, 2016 WL 4147241, at *6. (internal citation omitted).  There are no such allegations of direct contact with Plaintiff's employment here.  At best there are boilerplate allegations that Rosen, Popkin, or Hall "possessed the power" to hire, fire, determine pay, and work schedules, Compl. ¶ 25, but none related to Ullo herself.

There is also an allegation that Rosen, Popkin and Hall "regularly reviewed the Bars' financial statements," *id.* ¶ 30, without any factual allegation of financial control.[4]  And even financial control is not sufficient as a matter of law to create an employer-employee relationship. For example, the Complaint falls far short of cases like *Irizarry v. Catsimatidis*, where the CEO was involved in nearly every aspect of the daily operations of his grocery stores, including

---

[4]     If reviewing a business's financial statements were sufficient to create an employee-employer relationship, then every secured lender and Wall Street analyst would be an employer, too.

dealing with in-store displays, vendors, customers, employees, merchandise, and even handling customer complaints, in addition to having financial control.  722 F.3d 99, 116-117 (2d Cir. 2013).  Even with all of that evidence, the Second Circuit characterized its employer liability finding at summary judgment as "a close case."  *Id.* at 116.  Here, by contrast, the Complaint here does little more than recite the legal elements of joint employer liability.  *See* Compl. ¶¶ 21, 22, 24, 25, 28, 29.

Courts have rejected nearly identical allegations as those here, *see id.*, as "conclusory recitations of the economic reality test, . . . insufficient to plausibly allege" that individual defendants were employers.  *Chui-Fan Kwan*, 2018 WL 6655607, at *2-3 (S.D.N.Y. Dec. 19, 2018) (rejecting as conclusory allegations that individual defendants "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of employment, and (4) maintained employee records"); *see also Serrano v. I. Hardware Distrib., Inc.*, No. 14-cv-2488, 2015 WL 4528170, at *3 (S.D.N.Y. July 27, 2015) (rejecting nearly identical boilerplate allegations).  If such vague and conclusory allegations were sufficient, an employee could "create de facto liability for high-level corporate officers any time a corporation violated the FLSA" – which is obviously not the law.  *Vasto*, 2016 WL 4147241, at *8 (internal citations omitted); *see also Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2015) ("ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer'. . .") (internal citations omitted).

### C.  Defendants Asermely and Lefavre cannot be liable as employers because they are merely employees themselves.

Plaintiff alleges that defendants Asermely and Lefavre were her employers because they had the title of "general manager" of the Bars, Compl. ¶ 31, and they performed duties that

general managers typically perform such as hiring and firing employees, determining schedules, and managing financial reports and statements. *Id.* ¶¶ 32, 33. Asermely and Lefavre are also lumped in with the other three Individual Defendants as alleged joint employers. *Id.* ¶ 35.

These allegations are not only insufficient to state a claim for joint employer liability for the reasons discussed above, but they fall short of even alleging an employer-employee relationship in the first place. Typically, only "[i]ndividuals with significant decision-making authority over a company may be liable as employers under the FLSA." *Nichols v. Mahoney,* 608 F. Supp. 2d 526, 548 (S.D.N.Y.2009). "[A]n individual does not become an employer merely by directing employees to carry out tasks related to customer service." *Salinas*, 123 F. Supp. 3d at 464. At most, as general managers with no ownership or other control of the Bars, Asermely and Lefavre were employees, just like Ullo herself, and cannot be held liable simply because they had some supervisory responsibilities.

## II.  PLAINTIFF'S CLASS ACTION CLAIMS SHOULD BE DISMISSED, OR IN THE ALTERNATIVE, HER RULE 23 FLSA ALLEGATIONS SHOULD BE STRICKEN

The Complaint contains a series of class action allegations that are improper as a matter of law, and should therefore be rejected. The Court has discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although "motions to strike are viewed with disfavor," such a motion made on grounds of impertinence or immateriality may be granted where "it can be shown that no evidence of the allegation would be admissible." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). Further, "to succeed on a motion to strike class allegations, a defendant must demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts [the] plaintiffs may be able to obtain

12

during discovery." *Bowling v. Johnson & Johnson*, No. 17-cv-3982, 2018 WL 1587598 (S.D.N.Y. Mar. 28, 2018) (internal citations omitted).

Plaintiff purports to seek relief for alleged violations of the FLSA using Federal Rule of Civil Procedure 23's class action procedure. *See* Compl. ¶¶ 61, 62, 65a, 65b. In particular, Plaintiff alleges that "causes of action one [and] two" (for unlawful tip-credits, tip sharing, and lack of notice under the FLSA), claims that workers were "paid less than minimum wage under federal" law, and that workers received incorrect pay statements will be pursued under Rules 23(a), (b)(2), (b)(3), and (c)(4). *Id.* ¶¶ 61, 62. She also lists as "questions of law and fact common to the" Rule 23(a)(2) and (b)(3) classes whether defendants gave proper notice and lawfully applied a tip credit under the FLSA. *Id.* ¶¶ 65a, 65b.

The FLSA, however, does not permit Rule 23 class actions. Instead, the FLSA has its own representative action procedure often termed a "collective" action, *see* 29 U.S.C. § 216(b), and that procedure is the *exclusive* mechanism for private individuals to vindicate their rights under the FLSA collectively. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) (because Rule 23 class and FLSA collective actions "are mutually exclusive," suits "seeking relief under the FLSA may only proceed through" 216(b), not Rule 23) (quoting *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)). Thus, Plaintiff's FLSA allegations pled under Rule 23 must be stricken, as they are improper as a matter of law. *See Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 68 (N.D.N.Y. 2008) (striking improper FLSA allegations under Rule 12(f) because the injunction plaintiffs sought was "not an available remedy" as a matter of law).

Whether the result of carelessness or by design, Plaintiff's pleading deficiency is not harmless error, or some mere technicality. There are important substantive differences between

a FLSA collective action and a Rule 23 class action that impact how this case proceeds.  For

example, unlike Rule 23 where class members may remain absent all the way through judgment,

FLSA collective actions members must affirmatively join the litigation by filing a written

consent with the court.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016)

(discussing differences between FLSA and Rule 23 classes).  As such, the discovery burdens

associated with FLSA and Rule 23 actions differ.  *See, e.g., Charles v. Nationwide Mut. Ins. Co.*,

Inc., No. 09-cv-94, 2010 WL 7132173, at *1 (E.D.N.Y. May 27, 2011) (distinguishing the

"procedural mechanism" for FLSA discovery from Rule 23 discovery, and analyzing plaintiff's

motion to compel each type of discovery separately); *Dziennik v. Sealift, Inc.*, No. 05-cv-4659,

2006 WL 1455464, at *2 (E.D.N.Y. May 23, 2006) (distinguishing Rule 23 discovery from

FLSA discovery where "the limitations period continues to run until the potential class member

opts in").  Thus, having clarity regarding FLSA and Rule 23 allegations at this early stage in the

proceeding is imperative, as it impacts how the case will proceed through discovery and motion

practice, should some portion of Plaintiff's Complaint survive this motion.[5]

---

[5]      Although Defendants do not agree that this case can appropriately be certified as a class
action, or that Ullo is an appropriate class representative, Defendants do not seek to strike the
Rule 23 allegations as they relate to the state law claims.

## <u>CONCLUSION</u>

For the reasons just given, Defendants respectfully request that the Court dismiss the

Complaint for failure to state a claim pursuant to Rule 12(b)(6), or strike certain improper class

allegations pursuant to Rule 12(f).


Dated: April 5, 2019

Respectfully submitted,

By:   /s/ Matthew L. Schwartz
    Matthew L. Schwartz
    Byron Pacheco
    Kate A. Ferguson
    BOIES SCHILLER FLEXNER LLP
    55 Hudson Yards
    New York, New York 10001
    Telephone: (212) 446-2300
    Email: mlschwartz@bsfllp.com
        bpacheco@bsfllp.com
        kferguson@bsfllp.com

    *Counsel for All Defendants*