**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ALLISON ULLO, *individually and on*
 *behalf of others similarly situated*,

                                                                18 Civ. 11281 (PAE)

              *Plaintiff,*

        --against--

ABY ROSEN, GREGG POPKIN,
PATRICK HALL, DANE ASERMELY,
SEBASTIEN LEFAVRE, RFR HOLDING
LLC, GPH PARTNERS LLC, GPH
MANAGEMENT LLC, AND GP
SERVICES LLC,

              *Defendants.*
--------------------------------------------------------X


### AMENDED COMPLAINT

Nature of Case ............................................................................................... 2
Jurisdiction and Venue .................................................................................. 2
Plaintiff ............................................................................................................. 3
Summary of Defendants as "Employers" .................................................. 3
Defendant RFR Holding LLC ....................................................................... 4
Defendant GPH Partners LLC ...................................................................... 6
Defendant GPH Management LLC ............................................................... 10
Corporate Defendants' Websites ................................................................. 13
The Lease of Gramercy Park Hotel .............................................................. 17
Rose Bar & Jade Bar ....................................................................................... 18
Plaintiff's Employment at Gramercy Park Hotel ..................................... 21
Individual Defendant Aby Rosen ................................................................ 25
Individual Defendant Patrick Hall .............................................................. 29
Individual Defendants Sebastien Lefavre and Dane Asermely ............. 31
Defendant GP Services LLC .......................................................................... 36
Defendants' Unlawful Acts Related to Forced Tip Sharing .................... 39
Class Action Allegations ............................................................................... 40
Plaintiff's Claims Against Defendants ........................................................ 42
Jury Demand .................................................................................................... 49
Endnotes to Amended Complaint ............................................................... 50

Plaintiff Allison Ullo ("Plaintiff"), individually and on behalf of other people similarly situated, by and through her attorney, alleges the following upon her knowledge and belief, and as against Defendants Aby Rosen, Patrick Hall, Dane Asermely, Sebastien Lefavre, RFR Holding LLC, GPH Partners LLC, GPH Management LLC, and GP Services LLC.

## NATURE OF CASE

1.      Plaintiff brings ten claims on behalf of herself, and other similarly situated individuals for certain claims, for violations of:

> (1) Section 7434 of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434 (claim one);
>
> (2) Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-19 ("FLSA") (claims two, three and four), and
>
> (3) New York Labor Law §§ 190-99A and §§ 650-65 ("NYLL"), and the regulations promulgated by the New York Department of Labor, N.Y. Comp. Codes R. & Regs. tit. 12, § 146 ("Hospitality Wage Order") (claims five, six, seven, eight, nine and ten).

2.      Plaintiff seeks redress for damages, liquidated damages, statutory damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs on behalf of herself and, on certain claims specified below, those individual people who are similarly situated.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Plaintiff's IRC and FLSA claims (claims 1-4) pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) and supplemental jurisdiction over Plaintiff's NYLL and Hospitality Wage Order claims (claims 5-10) pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this District,

Defendants maintain their corporate headquarters and offices within this district, Defendants operate their business in this District, and Defendants employed Plaintiff in this District.

## PLAINTIFF

5.      From November 9, 2009, until March 23, 2018, Plaintiff worked as a "Cocktail Server" or waitress inside Gramercy Park Hotel at "Rose Bar" and "Jade Bar."

6.      Gramercy Park Hotel is an eighteen-story, 185-room hotel located at 2 Lexington, New York, New York.

7.      As an employee at Gramercy Park Hotel, Plaintiff handled and dispensed alcoholic beverages, received payment for the alcoholic beverages, and handled containers that had held alcoholic beverages.

8.      As an employee at Gramercy Park Hotel, Plaintiff handled and dispensed food and received payment for food consumed on the premises of the hotel including in Rose Bar and Jade Bar.

9.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

## SUMMARY OF DEFENDANTS AS "EMPLOYERS"

10.     Based on the allegations in this Complaint, RFR Holding LLC, GPH Partners LLC, GPH Management LLC, and GP Services LLC constitute a single employer of Plaintiff and all similarly situated employees under the FLSA and NYLL because of the (1) interrelation of operations, (2) centralized control of labor relations; (3) common management; and (4) common ownership and financial control. As a single employer, these corporate defendants had and exercised, among other things, the power to hire and fire these employees, supervise and control their work schedules as well as their conditions of employment, determine their rate and method of payment including how tips were taken and distributed, and maintain their

employment records including hours of work, tips, and sales as well as information related to Plaintiff and other employees' federal and state tax forms.

11.     Based on the allegations in this Complaint, Aby Rosen, Patrick Hall and the general manager of Rose Bar and Jade Bar during the relevant time (*i.e.*, Sebastien Lefavre from May 2011 until the end of August 2015, and Dane Asermely from October 2015 until the present time) were employers of Plaintiff and were (and continue to be) employers of other individual people similarly situated because these individual defendants had, among other things, the power to hire and fire them, supervise and control their work schedules as well as their conditions of employment, determine their rate and method of payment including how tips were taken and distributed, and maintain their employment records including hours of work, tips, and their sales. And, in fact, these individual defendants exercised such power throughout the course of Plaintiff's employment.

12.     In sum, these corporate entities and these individual defendants had the power to control Plaintiff and other individual people similarly situated as employees given the economic reality as alleged in this Complaint and, in fact, exercised such power.

## DEFENDANT RFR HOLDING LLC

13.     On September 20, 1996, Defendant RFR Holding LLC was established and organized as a limited liability company under the laws of New York.

14.     Defendant RFR Holding LLC has provided the following address to the New York Secretary of State for process of service:

> RFR HOLDING LLC
> 390 PARK AVENUE 3RD FL
> NEW YORK, NEW YORK, 10022

15.     RFR Holding LLC has registered the "RFR" mark with the U.S. Patent and Trademark Office. RFR Holding LLC registered the RFR mark for standard characters without claim to any particular font style, size, or color for use in the real estate industry.

16.     RFR Holding LLC provided samples of the mark by submitting screenshots from https://rfr.com/ showing the mark as used in connection with the services. (The website at https://rfr.com/ is referred to as the "RFR website" in this Complaint.)

17.     Defendant Aby Rosen signed and submitted the trademark application for RFR Holding LLC with the title "President."

18.      The application for RFR Holding LLC to the U.S. Patent and Trademark Office states that is a limited liability company legally organized under the laws of New York with an address of 390 Park Avenue, 3rd Floor, New York, New York 10022.

19.     In its registration for the trademark, RFR Holding LLC stated its first use in commerce of the RFR mark as occurring in 1996, the year in which RFR Holding LLC was established under the laws of New York.

20.     The RFR website states: "At the end of 2010, RFR became sole proprietor and owner/operator of the renowned, 185-room Gramercy Park Hotel in New York City."[1]

21.     On February 18, 2015, RFR Holding LLC answered a complaint filed in Supreme Court in New York count (Index #162671/2014) that had alleged "GPH Partners LLC d/b/a Gramercy Park Hotel is a New York limited liability company with its headquarters at 2 Lexington Avenue, New York, New York 10010" and "RFR is the sole proprietor and owner/operator of the Hotel." RFR Holding LLC did not deny these allegations, and thereby admitted them as a matter of law.

22.     On February 2, 2018, RFR Holding LLC doing business as Rose Bar submitted a verified answer to a complaint in Supreme Court in New York County (Index #158296/2017) after a person, Jennifer Trede, sued RFR Holding LLC for negligence related to an incident in which she was severely injured on February 8, 2017, inside Rose Bar in Gramercy Park Hotel.

23.     RFR Holding LLC has responded to Plaintiff's discovery demands in the case (Index #158296/2017) including submitting responses to document requests as well as naming witnesses to the February 8, 2017, incident at Rose Bar that include another cocktail waitress who worked with Plaintiff the night of the incident and Plaintiff, who RFR Holding LLC stated was employed as a "hostess" at the bar and whose contact information they were in the process of "researching."

## DEFENDANT GPH PARTNERS LLC

24.     On April 13, 2004, Defendant GPH Partners LLC was established and organized as a limited liability company under the laws of New York.

25.     On October 28, 2008, GPH Partners LLC registered the stylized/design "GPH" as a trademark for "Hotel services; restaurant services and bar services."[2]

26.     On September 14, 2015, GPH Partners LLC requested an amendment to correct "to correct a good faith error made by the owner as its official corporate entity name is 'GPH Partners LLC' rather than 'GPH Partners, LLC'." GPH Partners LLC listed its address as 390 Park Avenue, 3rd Floor New York, New York 10022 and proposed continuing to use the same address.[3]

27.     On October 17, 2014, Frank Mangieri signed the declaration submitted to the USPTO by GPH Partners LLC as "Vice President" of the GPH Partners LLC.[4]

28.     Frank Mangieri is registered with New York State Court United Court System, which has listed his contact information as:

> FRANK JOHN MANGIERI
> RFR HOLDING LLC
> 390 PARK AVE FL 3RD
> NEW YORK, NY 10022-4608
> United States
> (New York County)
> (212) 308-1000

29.     The RFR website lists Frank Mangieri as RFR's "Chief Legal Officer."[5]

30.     On November 10, 2015, the USPTO issued a certificate of registration for the trademark to GPH Partners LLC, a New York Limited Liability Company located at 390 Park Avenue, 3rd Floor, New York, NY 10002.[6]

31.     One July 24, 2018, GPH Partners LLC submitted specimens of the registered mark (*i.e.*, the stylized GPH) that included screenshots of the GPH website. (The website at http://www.gramercyparkhotel.com/ is referred to as the "GPH website" in this Complaint.)

32.     The first specimen includes a screenshot with "Cocktail Parties" at the "candlelit Rose Bar" allowing users to "book an event" and features a picture with the caption "Fashion Week After Party Hosted by POM Wonderful in the Rose Bar."[7] The screenshot is of the webpage at www.gramercyparkhotel.com/events/cocktail_parties.

33.     Every webpage for the GPH website states at the bottom: Gramercy Park Hotel, 2 Lexington Avenue, New York, New York 10010, Copyright © GPH Partners LLC.

34.     Gramercy Park Hotel's twitter page frequently features pictures of Rose Bar and Jade Bar.[8]

35.     GPH Partners LLC has repeatedly responded and paid monetary penalties to New York City's Department of Building ("DOB") for violations at 2 Lexington Avenue (*i.e.*,

Gramercy Park Hotel) as well as made changes to the property and Gramercy Park Hotel in order bring the property and building into compliance with local laws and regulations. GPH Partners LLC has responded to the following violations filed by the DOB:

> April 22, 2013
> (Violation #35001769L)
>
> May 13, 2014
> (Violation # 35024483H)
>
> January 23, 2017
> (Violation #38252478R),
>
> July 26, 2017
> (Violation # 35276275Y), and
>
> October 15, 2018
> (Violation # 37013606H).

36.     GPH Partners LLC has given the New York City's Department of Building a mailing address of 390 Park Avenue, Fl. 3, NY, NY 10022.

37.     On October 21, 2016, GPH Partners LLC doing business as "Gramercy Park Hotel" and "Rose Bar" submitted a verified answer to a complaint filed in Supreme Court in New York County (Index # 155940/2016) that had been filed on July 14, 2016, seeking remedies for damages caused after a doorman at Rose Bar allegedly threw a customer to the floor and threatened to smash his hearing aid after it had fallen out of the customer's ear.

38.     Frank Mangieri verified the answer by GPH Partners LLC to the complaint.

39.     On October 21, 2016, GPH Partners LLC made numerous discovery demands on the plaintiff in the case (Index # 155940/2016) concerning the incident at Rose Bar.

40.     On November 30, 2016, GPH Partners LLC doing business as "Gramercy Park Hotel" and "Rose Bar" submitted a verified answer to an amended complaint in the case.

41.     Frank Mangieri verified the answer by GPH Partners LLC to the amended complaint.

42.     GPH Partners LLC responded to discovery demands and attended compliance conferences until a stipulation of dismissal between the parties was reached on October 11, 2017.

43.     On October 25, 2018, Frank Mangieri verified an answer in a lawsuit filed in Supreme Court in New York Count (Index #156028/2018) against GPH Investors LLC, GPH Partners LLC and GPH Managements LLC, among other companies, related to the premises at Gramercy Park Hotel.

44.     Since 2005, GPH Partners LLC has repeatedly filed petitions against the Tax Commission of the City of New York and the Commissioner of Finance of the City of New York as a party with a pecuniary and interest in the property at 2 Lexington Avenue. GPH Partners LLC filed such petitions in 2005, 2006, 2007, 2008, 2009, 2011, 2012,

45.     The tax petitions in 2005 and 2006 were filed by Ian Schrager as a "Member of Member" of GPH Partners LLC.

46.     The tax petition in 2007 was signed by Ian Schrager as "Vice President" of GPH Partners LLC.

47.     The tax petitions in 2011, 2012, 2014, and 2015 were signed by Michael Fuchs as a Member of GPH Partners LLC. These petitions stated that GPH Partners "was and still is a limited liability company and the Net Lessee of certain real property" at 2 Lexington Avenue.

48.     The RFR website states that Michael Fuchs is a "Co-Founder and Principal" of RFR.[9] Aby Rosen is the other "Co-Founder and Principal" listed on the RFR website.

49.     On February 18, 2015, GPH Partners LLC answered a complaint filed in Supreme Court in New York County (Index #162671/2014) that alleged "GPH Partners LLC d/b/a

Gramercy Park Hotel is a New York limited liability company with its headquarters at 2 Lexington Avenue, New York, New York 10010" and "RFR is the sole proprietor and owner/operator of the Hotel." GPH Partners LLC did not deny, and thereby by admitted as a matter of law, these allegations.

### DEFENDANT GPH MANAGEMENT LLC

50.     On or about April 18, 2005, Defendant GPH Management LLC was established and organized as a limited liability company under the laws of New York.

51.     On February 1, 2006, GPH Management LLC formed the Gramercy Park Hotel 401k Plan under federal law for its employees as a single employer.

52.     The named administrator of the Gramercy Park Hotel 401k plan is Rosemarie Russell-Cole.

53.     Rosemarie Russell-Cole describes herself as having the job of "Complex Director of Human Resources" for Gramercy Park Hotel on her Linkedin Page.

54.     GPH Management LLC has filed multiple applications for H-1B Visas including "Marketing and Sales Analyst (Hotel)" for employment at Gramercy Park Hotel.

55.     Rosemarie Russell-Cole has submitted to the U.S. Department of Labor an Application for Permanent Employment Certification (ETA Form 9089) on which Rosemarie Russell-Cole stated the Employer's name is "GPH MANAGEMENT LLC DBA GRAMERCY PARK HOTEL" at 2 LEXINGTON AVE. Rosemarie Russell-Cole also stated that Gramercy Park Hotel had 128 employees and that the year the business commenced was 2005 (the same year that GPH Management LLC was organized under the laws of New York).[10]

56.     The allegation that the 128 employees working for GPH Management LLC included **_all_** Cocktail Servers and bartenders, as well as other people working at Rose Bar and Jade Bar, will likely have evidentiary support after a reasonable opportunity for discovery.

57.     Rosemarie Russell-Cole filed the application under the title of "Human Resources Manager" for GPH Management LLC.

58.     On March 2, 2007, GPH Management LLC received a hotel liquor license (license #1180254) from the New York State Liquor Authority ("NYSLA") under Alcoholic Beverage Control ("ABC") Law § 3(14) (definition of "hotel"), § 64 (license to sell liquor at retail for consumption on the premises) and §106 (provisions governing licensees to sell at retail for consumption on the premises) for premises at 2 Lexington Avenue in New York, New York 10010.

59.     The three principals named on the hotel liquor license (license #1180254) are Aby Jacob Rosen, Michael Fuchs, and GPH Partners LLC.

60.     The liquor license only allows GPH Management to operate under three trade names: (1) "Gramercy Park Hotel," (2) "Gramercy Park Hotel – Jade Bar," and (3) "Gramercy Park Hotel – Rose Bar."

61.     GPH Management LLC's liquor license only allows employees of GPH Management LLC to handle, dispense or receive payment for alcoholic beverages or otherwise handle containers that have held alcoholic beverages.

62.     Since March 2, 2007, GPH Management LLC has been the only entity that has appeared before the New York State Liquor Authority on behalf of Gramercy Park Hotel.

63.     On April 4, 2018, GPH Management LLC appeared before the NYSLA (agenda item #2018-00581) in response to the bars' failure to display the liquor license on January 12, 2018, which has a maximum penalty of revocation plus bond claim.

64.     On August 16, 2018, GPH Management LLC appeared before the NYSLA (agenda item #2018-01611) in response to three violations on June 10, 2017, four violations on February 22, 2018, one violation on March 24, 2018 (the date on which Plaintiff was arrested, as explained below), and nine violations on March 29, 2018.

65.     On November 29, 2018, Attorney Donald Bernstein and Peter Yeung, the General Manager of Gramercy Park Hotel, appeared as representatives of "GPH Management LLC doing business as Gramercy Park Hotel" before the Business Affairs and Street Activities Committee of Manhattan Community Board Six ("CB6") seeking approval for a method of operation change allowing Rose Bar to have a DJ play music as well as live music (as it had been doing since 2006 when it opened but failed to obtain explicit approval for from CB6 or the NYSLA).

66.     On December 12, 2018, CB6 passed the following resolution (bold in original):

**Resolution of No Objection for a Method of Operation Change for GPH Management LLC. doing business as Gramercy Park Hotel at 2 Lexington Avenue WHEREAS, Donald Bernstein, Attorney, and Peter Young** [sic]**, Manager** appeared before the Business Affairs and Street Activities Committee of Manhattan Community Board Six (CB6) on **November 29, 2018**, CB6 having jurisdiction of the premises in the license application process;

**WHEREAS**, the Hotel is open 24 hours daily, and the bar is open until 4:00 AM daily;

**WHEREAS**, no members of the community had any comments for or against;

**THEREFORE, BE IT RESOLVED** that pursuant to the presentation made by the Representative at the meeting of the Business Affairs and Street Activities Committee held on November 29, 2018, and pursuant to all other considerations, CB6 has no objection to the application so long as the Applicant adheres to all the representations made by the Representative to the committee.

**BE IT FURTHER RESOLVED**, if the SLA application, **however**, contains a different

method of operation than has been presented to CB6 as stated in this, **including** "Hours of Operation", that differ in any way from those described above, then CB6 **opposes** the application and **urges** the SLA to deny the application based on such misrepresentation to Manhattan Community Board Six.

67.     On July 26, 2017, GPH Management LLC responded and resolved a Department of Building ("DOB") violation for the property at 2 Lexington Avenue (Violation #35276275Y).

68.     GPH Management LLC has applied for and received licenses to serve food at the hotel including the first floor where the bars are located in the hotel (Food Service Establishment License # 41363953 & # 41205305).

69.     GPH Management LLC has applied for and received at least seven permits from the Fire Department for the premises at 2 Lexington Avenue in New York, New York including those permits under account #37332061, #37378585, #37332103, and #35042886.

70.     GPH Management LLC has filed petitions in 2017 and 2018 against the Tax Commission of the City of New York and the Commissioner of Finance of the City of New York in Supreme Court in New York County at Index #252809/2017 and Index #253208/2018. These petitions have stated that GPH Management "was and still is a limited liability company and the Owner of certain real property in the Borough of Manhattan, City of New York, which real property is" located at 2 Lexington Avenue.

71.     Defendant Aby Rosen signed the tax petitions filed by GPH Management LLC in 2017 and 2018.

## CORPORATE DEFENDANTS' WEBSITES

72.     The website at https://rfr.com/ is referred to as the "RFR website" in this Complaint.

73.     The website at http://www.gramercyparkhotel.com/ is referred to as the "GPH website" in this Complaint.

74.     The website at http://thestoregph.com/ is referred to as the "GPH Store website" in this Complaint.

75.     The website at http://artgph.com/ is referred to at the "GPH Art website" in this Complaint.

76.     The same server at 70.32.80.96 hosts (1) the RFR website, (2) the GPH Store website, and (3) the GPH Art website.

77.     When 70.32.80.96 is entered as a web address, it brings the user to the RFR website.

78.     The RFR website states: "RFR Holding LLC is a Manhattan based, privately controlled real estate investment, development and management company founded in 1991 [sic] by Aby Rosen and Michael Fuchs."[11]

79.     The RFR website states Defendant Aby Rosen is "Co-Founder and Principal." Michael Fuchs is also named as "Co-Founder and Principal."[12]

80.     The RFR website refers to Defendant Aby Rosen as "RFR President."[13]

81.     The RFR website lists "Gramercy Park Hotel" as a property and asset.[14]

82.     The RFR website states: "At the end of 2010, RFR became sole proprietor and owner/operator of the renowned, 185-room Gramercy Park Hotel in New York City."[15]

83.     The RFR website lists "Gramercy Park Hotel" as an "acquisition milestone" that occurred in 2006.[16]

84.     The RFR website describes Gramercy Park Hotel as including: "Extraordinary features, dining and location define this exceptional hotel. Guests receive access to the exclusive Gramercy Park, enjoy Julian Schnabel designed furniture and museum quality artwork throughout as well a wide array of top-notch amenities. The Maialino Restaurant and

Gramercy Park Roof Terrace by award-winning restaurateur Danny Meyer, the Rose Bar and the Jade Bar offer the highest quality food and drink."[17]

85.     The RFR website provides the following "Building Information" for Gramercy Park Hotel:[18]

|  |  |
|---|---|
| Constructed | 1924-1925 |
| Architect | Robert T. Lyons |
| Guest Rooms | 185 |
| Renovated | 2010 |
| Amenities | Rose Bar |
|  | Jade Bar |
|  | Gramercy Park Terrace |
|  | Maialino Restaurant |
|  | Fitness Center |
|  | Key to Gramercy Park |

86.     The RFR website states that "Property Information" about Gramercy Park Hotel may be received from Ben Davidson and lists the phone number "212 308 1000."[19]

87.     The RFR website states that Ben Davidson is part of the "Executive Team" of RFR who handles "Hotel Asset Management."[20]

88.     Ben Davidson has stated his employer is "RFR Holding" on his registration and report form for political donations submitted to the Federal Election Commission in 2016.

89.     The RFR website states "Contact Us" at:

New York
390 Park Avenue
New York NY 10022
212 308 1000[21]

90.     The RFR website states: "Visit gramercyparkhotel.com."[22]

91.     The GPH website provides the history of the hotel beginning in 1925 and states: "For 8 decades, the New York Hotel remained much the same until art collector and real estate developer Aby Rosen took it over."[23]

92.    The GPH website states: "Reservations for the Rose Bar are available when made in advance."[24]

93.    The GPH website states:

Serving as both a hotspot for the city's most fashionable, talked about events and a low-key escape for A-listers looking for a quiet cocktail, Manhattan's most prominent tastemakers flock to the exclusive Rose Bar. It is home to Fashion Week after-parties, private film screenings, press events and on any given night, Rose Bar's live music programming and world-renowned DJs spinning their custom playlists.

In addition, the lounge's intimate music showcases, known as the Rose Bar Sessions, offer guests exclusive performances from artists like Axl Rose, Dave Navarro, Rufus Wainwright, Elle King, Lucius and BØRNS.

This grand space with soaring ceilings is like none other in the city. It features custom furniture from Oscar-nominated director Julian Schnabel and a rotating display of bold artwork from 20th century masters like

Andy Warhol, Jean-Michel Basquiat, Keith Haring, Richard Prince and Damien Hirst. But the space also maintains a sense of intimacy and warmth from its solid walnut bar, a 25-foot-long tufted banquette of silk velvet, a hand-carved limestone fireplace and Douglas fir columns. Limited reservations are accepted until 9pm. After this time entry is by invitation only.

In the small alcove just off the Rose Bar, the chic Jade Bar provides a welcoming space all its own. With views of residential Lexington Avenue, velvet-upholstered seating areas, verdant walls and, like the adjacent Rose Bar, stunning works of modern art, the Jade Bar offers a calming, intimate space serving exotic cocktails, classic aperitifs and bar bites.[25]

94.    The GPH Store website sells items branded with "Gramercy Park Hotel" or with a stylized "GPH" and states at the bottom of the webpage: Copyright © 2019 RFR Holding LLC 2 Lexington Avenue, New York NY 10010 | Reservations 212 920 3300 | Telephone 212 920 3300 | gramercyparkhotel.com

95.    The GPH Store website links users to "The Art GPH" at http://artgph.com/.

96.    The GPH Art website contains thumbnail pictures of the art inside Gramercy Park Hotel and states at the bottom of the webpage: Copyright © 2019 RFR Holding LLC 2

Lexington Avenue, New York NY 10010 | Reservations 212 920 3300 | Telephone 212 920 3300 | gramercyparkhotel.com

97.     GP Services LLC does not own a website, domain name, or email.

## THE LEASE OF GRAMERCY PARK HOTEL

98.     Gramercy Park Hotel is owned by the Lillian Goldman 2002 L.L.C., a limited liability company established and organized under the laws of New York, and the Co-Executors of the Estate of Sol Goldman doing business as Empire Associates Realty Co. (who are collectively referred to as "Landlord" in this Complaint).

99.     On August 5, 2003, the Landlord entered into a lease of Gramercy Park Hotel with GPH Investors LLC, a Delaware limited liability company. The lease permitted GPH Investors LLC to assign the lease to another party.

100.    In the lease, GPH Investors LLC listed its address as c/o RFR Holding LLC, 400 Park Avenue, New York, New York.

101.    On April 23, 2004, the Landlord amended the lease with GPH Investors LLC.

102.    On the same day, April 23, 2004, GPH Investors LLC assigned the lease to Defendant GPH Partners LLC, a New York limited liability company having an address of c/o RFR Holding LLC, 400 Park Avenue, New York, New York.

103.    The term of the lease assigned by GPH Investors to GPH Partners LLC commenced on August 5, 2003, and expires on September 30, 2078.

104.    GPH Investors LLC executed the amended lease with the signatures of Defendant Aby Rosen and non-party Ian Schrager.

105.    GPH Investors LLC executed the assignment as assignor with the signatures of Defendant Aby Rosen and non-party Ian Schrager.

17

106.    GPH Partners LLC executed the assignment as assignee with the signatures of Defendant Aby Rosen and non-party Ian Schrager.

107.    On October 26, 2006, the Landlord and GPH Partners, a New York limited liability company having an address of having an address of c/o RFR Holding LLC, 390 Park Avenue, New York, New York, executed a Second Amended Agreement of Lease (Hotel Lease) for Gramercy Park Hotel at 2 Lexington Avenue, New York, New York to expire on September 30, 2078. GPH Partners LLC executed the lease with the signatures of Defendant Aby Rosen and non-party Ian Schrager.

108.    On December 28, 2006, GPH Partners LLC executed an agreement with the Union Labor Life Insurance Company, a Maryland corporation, entitled "First Consolidated, Amended and Restated Promissory Note" in the principal amount of $140,000,000.

109.    On or about December 16, 2010, Ian Schrager sold his interests in entities owning the lease of the Gramercy Park Hotel to Aby Rosen and Michael Fuchs.

## ROSE BAR & JADE BAR

110.    Gramercy Park has two bars known as "Jade Bar" and "Rose Bar" that are adjacent to each other.

111.    GPH Managements LLC owns the license to sell alcohol at 2 Lexington Avenue. The license allows GPH Management LLC to operate under three trade names: (1) "Gramercy Park Hotel," (2) "Gramercy Park Hotel – Jade Bar," and (3) "Gramercy Park Hotel – Rose Bar."

112.    Hotel security is responsible for the security at the bars and throughout the hotel.

113.    The hotel cleaning staff is responsible for maintaining the rooms where the bars are located in the morning when hotel guests have access to the closed bars, which frequently have newspapers for the hotel guests to read in the rooms.

114.    Customers of the bars use the four bathrooms located in the hotel's lobby.

115.    The bathrooms are monitored and cleaned by hotel staff.

116.    Reservations for Rose Bar may be made through the hotel.

117.    Gramercy Park Hotel promotes access to Rose Bar and Jade Bar as an amenity of staying as guest at the hotel.

118.    Gramercy Park Hotel staff in the hotel's kitchen prepares the food for the bars. The bars and the hotel use the same kitchen through the night.

119.    Hotel guests may purchase their food and alcoholic drinks by charging the cost to their room.

### *Bartenders' Shifts*

120.    Jade Bar has one bartender working at all times. Jade Bar opens at 12 p.m. and remains open until close or approximately 4 a.m.

121.    A barback begins working at Jade Bar beginning at 7 p.m. and continues to work until close or approximately 4 a.m.

122.    Rose Bar opens at 6 p.m. with one bartender and one barback. A second bartender begins working at 10 p.m. The two bartenders and one barback work until close or approximately 4 a.m.

123.    The barbacks at Rose Bar and Jade Bar wait on customers, take orders from customers, prepare and serve alcoholic drinks including cocktails. The barbacks are also responsible for collecting and cleaning glasses as well as taking out the trash from behind the bar. The barbacks work in the bar area, in front of and around customers, and are constantly interacting with customers.

124.    Defendants do ***require*** the bartenders at Rose Bar and Jade Bar to tip share.

125.    Defendants only *require* Cocktail Servers to tip share.

*Waitresses' Shift*

126.    On or around 4 p.m., one waitress's shift begins.

127.    All waitresses are required to get dressed for work in a dress uniform as well as preparing her hair and make-up, which takes at least 20 minutes. This shift ends at 9 p.m. ("Shift 1").

128.    The managers of the bar frequently remind the Cocktail Servers in person or in emails to take the time to "look beautiful." For example, on April 26, 2015, Luke Blanch emailed Plaintiff and other waitresses: "Uniforms should be proper, everyone should display their most effortless smiles & girls on the floor should be beautifully made up." The former creative director of Rose Bar who started working at the bars on its opening day in the autumn of 2006 frequently stated that the "key" to Rose Bar was "great p**sy" and frequently emphasized the way the Cocktail Servers looked when serving customers in Rose Bar and Jade Bar.

129.    The hourly rate paid by Defendants to Plaintiff getting ready for work (including the donning of the uniform and putting on make-up) was below minimum wage because Defendants applied a "tip credit" to it even though it was non-tipped work.

130.    After getting dressed and prepared, the waitress on Shift 1 is primarily required to perform non-tipped duties related to setting up Rose Bar including but not limited to cleaning tables, cleaning the room, changing the receipt roll, collecting and cleaning all of the check presenters, putting candles on tables after removing them out of boxing and individual packaging and lighting them. When events were held in Rose Bar, Plaintiff and other Cocktail Servers were also required to move furniture in Rose Bar including up and down the stairs from the second

20

floor. The hourly rate paid by Defendants to Plaintiff doing this work was below minimum wage because Defendants applied a "tip credit" to it even though it was non-tipped work.

131.    At 6 p.m., a second waitress begins working in Rose Bar. This shift ends at 4 a.m. ("Shift 2").

132.    At 9 p.m., a third waitress begins working in Rose Bar. This shift ends at 4 p.m. ("Shift 3").

133.    From 10 p.m. until 1 a.m., a waitress is required to work a "swing shift."

134.    After the close of the shift, the waitresses are required to perform non-tipped duties including handling all paperwork including calculating the sales for the night. This non-tipped work takes approximately 30 minutes and may take as much as an hour.  The hourly rate paid by Defendants to Plaintiff when doing this work was below minimum wage because Defendants applied a "tip credit" to it even though it was non-tipped work.

## PLAINTIFF'S EMPLOYMENT AT GRAMERCY PARK HOTEL

135.    On November 9, 2009, Plaintiff began working at Gramercy Park Hotel in "Rose Bar."

136.    Plaintiff was hired after being interview by four employees of RFR in a second floor meeting room in Gramercy Park Hotel.

137.    Nine years later, Plaintiff was told she was being "taken off the schedule" by Defendant Patrick Hall after she was arrested along with Francisco Torres in Rose Bar on March 24, 2018. Defendant Patrick Hall stated that Plaintiff could come back on the schedule to work once the case was resolved.

138.    Plaintiff elected not to return to Gramercy Park Hotel but instead focus on establishing her public relations company, a goal she had set for herself the previous year and had been working on as a side project.

139.    Upon reviewing the evidence in the case, the prosecutor elected not to seek an indictment of Plaintiff and otherwise consented to having the state court dismiss all felony charges against Plaintiff. In addition, the prosecutor subsequently moved for the state court to enter an adjournment in contemplation of dismissal ("ACD"). The case was sealed by the Court and is subject to automatic dismissal under N.Y. Crim. Proc. Law § 170.55.

140.    Francisco Torres has subsequently pleaded guilty to violating New York Penal Law § 220.16 and New York Penal Law § 220.39.

141.    Francisco Torres began coming to Rose Bar as a friend of Defendant Dane Asermely when Dan Asermely started working as the general manager of Rose Bar and Jade Bar in October 2005. Defendant Aby Rosen hired Dane Asermely after Sebastien Lefavre left as general manager of Rose Bar and Jade Bar at the end of August 2005.

142.    Francisco Torres primarily came to Rose Bar on Thursday, Friday and Saturday nights and was allowed into Rose Bar, which is "reservations only" bar and has a doorman, as a friend of Defendant Dane Asermely.

143.    Defendant Dane Asermely frequently had Francisco Torres sit at his table in Rose Bar in the center of the room and often instructed the staff to give him discounts on the bill. Francisco Torres never paid for the alcohol but had his drinks put on the bill of people that Francisco Torres had brought the bar as his "clients."

144.    Two months before the arrest, non-party R.B., a floor manager at Rose Bar and Jade Bar, told Plaintiff that Francisco Torres had been selling drugs to customers, who were

referred to as "clients." R.B. asked Plaintiff to tell customers to go to Francisco Torres if they ever inquired about buying drugs in the bar.

145.    Prior to the arrest, Plaintiff did not know the name of Francisco Torres nor did Francisco Torres know Plaintiff's name. Plaintiff could only identify Francisco Torres as friends with Defendant Dane Asermely.

146.    From October 2015 until Plaintiff stopped working at Rose Bar, Defendant Dane Asermely frequently went into single-person bathrooms in the hotel with multiple people including customers of the bar and often seemed to be acting in a manner consistent with having taken drugs.

147.    On the night of the arrest, while Plaintiff and Francisco Torres were being detained together, Francisco Torres told Plaintiff "I work with Dane" and explained, "I bring my clients to Rose Bar." Francisco Torres repeatedly expressed concern that he had been embarrassed in front of his clients in Rose Bar who were still sitting with Defendant Dane Asermely. Francisco Torres also repeatedly apologized to Plaintiff after having asked her name, which he did not previously know prior to that moment.

148.    According to the police on the night of Plaintiff's arrest, Francisco Torres repeatedly told the police that he "worked at Rose Bar."

149.    Plaintiff voluntarily waived her *Miranda* rights on the night of the arrest and freely answered all questions posed to her by the police. After being interviewed, one police officer left the room and told another in the doorway, "We got the wrong person." Later that night, a police officer apologized to Plaintiff stating, "I'm sorry this happened. You were just in the wrong place at the wrong time." The police explained that they had been investigating drug

sales at Rose Bar for about 18 months, as they believed an employee was facilitating drug sales through the bar.

150.   After being arrested, Plaintiff hired a private investigator that met with hotel security at Rose Bar that controlled the security cameras in the bars and talked with employees. Based on his investigation, the private investigator concluded that Defendant Dane Asermely was allowing Francisco Torres to sell drugs in Rose Bar because it helped him increased sales at the bar, including high-priced bottle service required to sit at certain tables. Defendant Dane Asermely was under pressure from Defendant Aby Rosen to maintain or increase sales during this time period.

151.   The former creative director of Rose Bar who began working there on opening day in 2006, three years before Plaintiff was hired, has stated that he intentionally invited drug dealers to Rose Bar because some customers want drugs at the bar and the presence of drug dealers is "good for the room."

152.   The day after being released, when Plaintiff told Defendant Dane Asermely that Francisco Torres told her and the police that he "worked with Dane" and "worked at Rose Bar," Defendant Dane Asermely responded to Plaintiff that "there's no paper trail." In addition, Dane Asermely told Plaintiff that he would try to get Plaintiff a job at the "Boom Boom Room," a high-end cocktail bar at the Standard Hotel in New York City.

153.   At their meeting at 11 Howard after the arrest, Patrick Hall stated the he would consider having her work at the "The Blond" at 11 Howard, another hotel bar that is owned/operated by Defendant RFR Holding LLC that Patrick Hall oversees.

154.    After the conservation with Patrick Hall, Dane Asermely contacted Plaintiff to tell her that he had secured her a job at the Standard Hotel and wanted to know when Plaintiff could start. Plaintiff never responded to his inquiry as she had decided to focus on her own company.

155.    Plaintiff is aware that Defendants have attempted to attack her credibility about the allegations related to her FLSA and NYLL claims by informing this Court about her arrest but Plaintiff affirms the allegations in this Complaint. In addition, Plaintiff was never fired from her job but was told by Defendant Patrick Hall that she was being removed from the schedule until the case was resolved. Moreover, Plaintiff could have easily secured a job at a similar bar. Plaintiff elected not to try to return to her job, or continue to work in the nightlife industry, because her company was successfully operating and she enjoyed working in public relations more than working as a Cocktail Server.

**INDIVIDUAL DEFENDANT ABY ROSEN**

156.    Defendant Aby Rosen is an individual person possessing a 50% ownership interest in Defendant RFR Holding LLC.

157.    As co-founder, principal and President of RFR Holding LLC, and as the allegations in this Complaint demonstrate, Defendant Aby Rosen has operational control over and controls significant functions of RFR Holding LLC.

158.    The allegation that Aby Rosen helped facilitate the initial formation of GPH Partners LLC and GPH Management LLC will likely have evidentiary support after a reasonable opportunity for discovery.

159.    The allegation that Aby Rosen is the primary cause of the formation of GP Services LLC will likely have evidentiary support after a reasonable opportunity for discovery.

160.    As the allegations in this Complaint demonstrate, Defendant Aby Rosen has operational control over GPH Partners LLC, GPH Management LLC, and GP Services LLC as well as the actual property of Gramercy Park Hotel including Rose Bar and Jade Bar.

161.    Defendant Aby Rosen has the power and authority to fire and hire employees at Rose Bar and Jade Bar, determine their rate and method of pay, determine their work schedules and otherwise affect the quality of their employment.

162.    Aby Rosen hired Defendant Dane Asermely and Defendant Sebastien Lefavre as general manager of the bars.

163.    Aby Rosen hired and subsequently fired Matthew Green as creative director of Rose Bar.

164.    Prior to hiring Matthew Green, Aby Rosen hired Damion Luaiye as creative director, negotiated and determined Damion Luaiye's salary, and later negotiated and agreed to Damion Luaiye's severance agreement.

165.    The general managers of Rose Bar, including Defendant Dane Asermely and Defendant Sebastien Lefavre, provided Aby Rosen monthly, quarterly and yearly reports on bar sales.

166.    Dane Asermely and Sebastien Lefavre frequently told the staff about whether Aby Rosen was pleased or not pleased with the bars' sales as well as Rose Bar and Jade Bar in general or particular employees.

167.    For example, on or around September 5, 2017, Defendant Dane Asermely and non-party Matthew Green told Plaintiff that "Aby himself has been upset by the numbers in the room and wants to see numbers closer to the blonde, so they are turning the room into more of a

club...closer to what the Blond is like." The Blond is the bar at 11 Howard; another hotel controlled RFR Holding LLC.

168.     Dane Asermely told Plaintiff that Aby Rosen wanted Rose Bar and Jade Bar to have sales of $40,000 a night rather than $15,000 a night.

169.     On September 5, 2017, Dane Asermely wrote to the staff: "There is a lot going on this week and it is just as overwhelming for us as it probably is for you. Its really important we all trust the process here and give it a shot. Aby will be in a lot over the next couple weeks."

170.     Aby Rosen frequently reviewed the status of the bars and made decisions such as putting a disco ball in the middle of the room and removing the famed Rose Bar pool table to increase the amount of tables that the waitress could serve during their shifts in order to increase bar sales and bottle service.

171.     The decision to remove the pool table was a significant one that could only be made by a person who had control of Rose Bar and Jade Bar. The pool table was part of the original design for Rose Bar in 2006 and created by Dutch designer Maarten Baas as part of his Smoke series of burnt furniture. As the New York Times reported, "Taking pride of place beneath one of Andy Warhol's drag queen portraits in the Rose Bar at the swanky new Gramercy Park Hotel in Manhattan is a very big pool table. The first thing you notice is the color of the felt - a brazenly seductive bordello red - and then you realize that all of the wood has been burnt."[26]

172.     Moreover, beginning in September 2017, all meetings for Rose Bar were held with managers from the Blond (the bar at 11 Howard hotel).

173.     Aby Rosen also selected the art to hang in the bars, which was frequently through companies owned/controlled by him or one of his best friends, Richard Sachs.

27

174.    For example, on August 22, 2017, Defendant Dane Asermely wrote to the employees at the bar, including Plaintiff, about an upcoming meeting stating "we will address the programming direction now that everything is finalized. Everything from music, uniforms, steps of service, events, the door and what our approach is to Late Night moving forward." The email further stated, "Aby has all eyes on Rose Bar right now, he's putting a ton of money back into this brand and it is our job to execute from a service perspective." Around this time, Defendant Dane Asermely told Plaintiff words to the effect that "Aby spent like $50K on all the new uniforms and decided on the guy who selected them."

175.    Likewise, two years earlier, on February 10, 2015, Luke Blanch, a manager, wrote to the staff of the bar, including Plaintiff, "Aby has confirmed that we will be revamping the art in the Rose and Jade Bars at the Gramercy Park Hotel. Kindly note below which works will be installed, loaned to us by the RBS Collection." Richard B. Sachs is the principal of The RBS Collection LLC and one of Aby Rosen's best friends.

176.    The bartenders frequently informed customers that the "bar was owned by Aby" and stated that "Aby picked the art" or words to those effect when asked by customers about the art in the bars. As alleged in this Complaint, the art is featured on http://artgph.com/, a website hosted and controlled by RFR Holdings LLC.

177.    Aby Rosen selected the designers and approved the dresses that the Cocktail Servers were required to wear. For example, after Sophie Theallet designed the waitresses' dress in January 2012, Aby Rosen and his wife, Samantha Boardman hosted a dinner at Rose Bar in her honor and her collaboration with Gramercy Park Hotel. Sophie Theallet told WWD, "Samantha and Aby, they brought me along and asked me to design a new dress for the [waitstaff at] Rose Bar."

178.    Sophie Thellet suggested the color of the dresses to Aby Rosen based on the bordello red of the pool table that had been in Rose Bar since its opening in 2006.

179.    The Wall Street Journal reported, "When real estate entrepreneur Aby Rosen wanted to restore his Gramercy Park Hotel to the forefront of New York's trend-setting scene, he invested in new paint and lighting, then turned to his wife, Samantha Boardman, for some fashion advice. Which designer, he wondered, should create the wait staff's uniforms?"

180.    Aby Rosen was quoted by the Wall Street Journal as saying the waitresses "shed their personality—which is in their own clothes—and put on a uniform that is the character of the space" in reference to Rose Bar.

181.    When Rose Bar came under investigation and scrutiny from the police and started to receive numerous violations from the NYSLA (as alleged above in paragraph 64 of this Complaint), the managers repeatedly told the Cocktail Servers that Aby Rosen was personally handling the matter. For example, on February 25, 2018, Dane Asermely wrote to the staff: "PLEASE continue to be vigilant behind the bar with cleanliness, Im sure DOH or SLA [State Liquor Authority] will be coming soon. Aby is personally working on getting this issue resolved for us(nypd), but in the interim please be cautious."  Three days earlier, on February 22, 2018, GPH Management LLC had received four violations for Rose Bar and Jade Bar.

**INDIVIDUAL DEFENDANT PATRICK HALL**

182.    Defendant Patrick Hall is vice-president of hotel operations for RFR Holding LLC and oversaw day-to-day hotel operations at Gramercy Park Hotel.

183.    Defendant Patrick Hall possessed and has exercised the power and authority to fire and hire employees at Rose Bar, determine their rate and method of pay, determine their work schedules and otherwise affect the quality of their employment.

184.    For example, after Plaintiff's arrest, Patrick Hall asked Plaintiff to meet with him and Rosemarie Russell-Cole in a conference room at 11 Howard (the hotel), a property controlled by RFR Holding LLC. Patrick Hall informed Plaintiff that he was taking Plaintiff off the schedule pending resolution of the criminal case. Patrick Hall also informed Plaintiff that he would consider having her work at The Blond at 11 Howard (where they were meeting) until the matter was resolved.

185.    Patrick Hall negotiated and announced events held at Rose Bar at which Plaintiff was employed. For example, in May 2015, Patrick Hall announced the "Rose Bar Sessions," a partnership between RCA Records and Gramercy Park Hotel.

186.    Patrick Hall participated in meetings with the creative director about hiring and later retaining Brian Newman to play a regular schedule on Tuesday and Thursday nights.

187.    Patrick Hall regularly reviewed the monthly, quarterly and yearly financial statements prepared by the general managers of the bar, Defendant Sebastien Lefavre and later Defendant Dane Asermely.

188.    Patrick Hall was responsible for executing the direction of the bar as determined by Defendant Aby Rosen including the increased focus on serving tables with bottle service.

189.    The allegation that Patrick Hall participated in the hiring or firing of the general managers and creative directors of Rose Bar and Jade Bar, including non-party Matthew Green and non-party Luke Blanch, will likely have evidentiary support after a reasonable opportunity for discovery.

190.    On January 17, 2017, Defendant Dane Asermely wrote to the staff: "I'm sure some of you are already aware, however Daniel Entenberg is no longer employed here at gramercy park hotel. Patrick Hall (Vice President of Hotel Operations for RFR) will be taking

his place until a new GM is hired. Patrick Hall is literally living in the hotel and will be on property quite a bit over the next few weeks so lets make sure we are all on time and on point throughout the shift, he will def pop in daily."

191.    Except for when Aby Rosen made a decision, Patrick Hall had final authority on day-to-day matters in Rose Bar and Jade Bar. For example, when Patrick C., a bartender, had issues with Matthew Green hosting events in the bar, he contacted Patrick Hall to discuss the conflict. Other employees contact Patrick Hall when serious conflicts or decisions needed to be resolved.

192.    Defendants Dane Asermely and Sebastien Lefavre regularly informed the staff about decisions made by Patrick Hall when instructing the staff and generally referred to him as being from "corporate" or RFR.

## INDIVIDUAL DEFENDANTS SEBASTIEN LEFAVRE AND DANE ASERMELY

193.    From 2008 to May 2011, Sebastien Lefavre was general manager at Goldbar. Goldbar is known for its golden skulls, 12 foot vaulted gold leaf ceilings and crystal chandeliers, and creative cocktails.

194.    While general manager of Goldbar, Sebastien Lefavre used and enforced a tip polling system (*i.e.*, a "house pool") where all tipped employees contributed their tips to the pool and were given a percentage based on their job and the number of hours they worked.

195.    In May 2011, Sebastien Lefavre began working as general manager at Rose Bar and Jade Bar. He continued to work as general manager until the end of August 2015 when Sebastien Lefavre left to start his own bar called "et al." with a former creative director of Rose Bar and Jade Bar, Damion Luaiye.

196.    As part owner and general manager of et al., Sebastien Lefavre has used and continues to use a tip pooling system where all tipped employees contribute their tips to the "house pool" and are given a percentage through a point system based on their job and the number of hours they worked.  This is industry standard and expected by his staff.

197.    In fact, when Sebastien Lefavre first began working as general manager at Rose Bar and Jade Bar, Sebastien Lefavre had tried to institute a policy of tip pooling where all tipped employees pooled their tips and they were then distributed based on position and hours worked on the ground that this was industry standard and had been done this way at Goldbar. The bartenders strongly objected, however, when Sebastien Lefavre tried to change the policy so he kept the policy described in this Complaint.

198.    In October 2015, Defendant Dane Asermely became the general manager of Rose Bar and Jade Bar and continued to be general manager during Plaintiff's employment.

199.    As general managers, Defendants Dane Asermely and Sebastien Lefavre possessed and exercised the power and authority to fire and hire employees at Rose Bar and Jade Bar, determine their rate and method of pay, determine their work schedules and job responsibilities and otherwise affect the quality of their employment.

200.    As general managers, Dane Asermely and Sebastien Lefavre interviewed and then hired potential cocktail servers and hostesses including Elle Erdman, Chloe Hooton, and Leah Distelhorst.

201.    On a daily basis, Dane Asermely and Sebastien Lefavre instructed bartenders and cocktail servers on all manner of work in the bars and approved the schedules of all employees and either sent out the schedule or had a floor manager send out the schedule via email.

202.    For example, on August 13, 2017, Dane Asermely sent out an email stating, "Next weeks schedule attached. Let us know of any additional swaps and/or conflicts to the current schedule."

203.    Defendant Dane Asermely used an email account ending in @gramercyparkhotel.com.  Floor manager R.B. and creative director also used emails ending in @gramercyparkhotel.com.

204.    On a weekly if not more frequent basis, the general manager (Sebastien Lefavre and later Dane Asermely) commonly talked about what "corporate wanted," what "RFR wanted" or what Patrick Hall or Aby Rosen had told them to do in the bar or otherwise approved.

205.    At meetings held with the entire staff, Dane Asermely and Sebastien Lefavre would discuss the financial numbers and then tell the staff whether "Aby" was pleased with the bar sales and the staff's conduct as well as well the general direction that Aby wanted to take the bar (*e.g.*, increasing table service or telling the Cocktail Servers to upsell to bottle service or the bartenders to promote a certain type of liquor).

206.    Defendants Dane Asermely and Sebastien Lefavre regularly produced financial records of the Rose Bar and Jade Bar including monthly, quarterly and annual profit/loss statements that included Plaintiff's and other employees' wages for Aby Rosen and Patrick Hall to review.

207.    On October 28, 2013, Defendant Sebastien Lefavre sent out the following email directed to the Cocktail Servers including Plaintiff:

> To All,
>
> Just received the September pnl (monthly report) we did amazing liquor cost at 18% and great revenue so thanks to all of you for your hard work and keep this up!

More importantly, NOBODY gets to decide how much to tip out. The numbers are clear

Jade:

7pct to busser
20pct to bar

Rose:

15pct to busser when 1 on the floor
20pct to bussers when 2 on the floor

20pct to the bar.

If I go through someone's paperwork and I find out you stole from your co-workers you will be automatically suspended the week after.

I find this so cheap and can't see myself working with people who do that. I don't care if you feel someone deserves it or doesn't its just simply unacceptable...

You have any questions feel free to ask myself or Briana.

PS: if you worked Jade and then came into rose because we are short a girl you are still responsible for the Rose Bar's percentages.

Seb.

208.   As exemplified in the email above, Sebastien Lefavre and Dane Asermely received monthly pnl statements (*i.e.*, profit and loss statements) referred to as the "monthly report" by staff and the managers. The general manager also went through everyone's paperwork on a weekly basis.

209.   On June 26, 2013, Sebastien Lefavre emailed the staff:

To All,

Accounting and corporate wants you guys to drop your cash sales at the end of the night. That means: 1) No looking at cash due anymore. 2) Due back will be done on the service charge amount only 3) If you have cash

sales you will have to drop with your report 4) You are allowed to keep you cash tips.

Example: If you have $200 in cash sales and $300 in service charges your cash due would be. $-100. In the past you would have kept the $200 and have due backs on the $-100. Now, you will have to drop the $200 in cash SALES and have due backs on the $300 service charges.

You are allowed to keep the tip made from the $200 cash sales but will still be responsible to tip out accordingly. You can come to me or briana if you have any questions.

Thanks.

210. As reflected in the email, the decision was made by "corporate," which was the common way the staff referred to RFR.

211. Around July 1, 2013, Brianna Swann, a floor manager before R.B., wrote to the cocktail servers and bartenders: "Attached is the schedule for the week ending 0707. Please remember that we are closing out the new way this week!!!!"

212. The same day, Sebastien Lefavre replied to all: "The new way means: 1) Drop cash sales. 2) Tip out on service charges number on top of report 3) Keep cash tips and tip out on those as well. Thanks."

213. As reflected in the emails quoted above, the new "corporate" policy was that employees should not report their cash tips and simply "keep" them.

214. This policy is reflected on Plaintiff's W-2 forms that Plaintiff received from Rosemarie Russell-Cole, which only reflected tips from credit cards and failed to include any cash tips that had been received and reported by the employees.

215. The policy of not including cash tips on employees' W-2s lowered the payroll taxes. That is, employers are required to pay a matching amount of social security and Medicare

taxes for their employees' and to pay State and Federal unemployment tax based on the employees' income.

216.    By lowering the reported income through the intentional exclusion of cash tips, the entity paying Plaintiff and the other employees lowered the amount that it had to match and thereby harmed them.

217.    As demonstrated by the emails quoted above, this was an intentional policy instituted and enforced by "Accounting" and "corporate."

218.    The reporting entity for Plaintiff on her W-2 throughout her employment was "GP Service LLC" even though GPH Management owned the liquor license and had only listed GPH Partners LLC in its application and renewals.

## DEFENDANT GP SERVICES LLC

219.    On October 14, 2009, Defendant GP Services LLC was established and organized as a limited liability company under the laws of Delaware.

220.    Defendant GP Services LLC has not been authorized by the New York State Department of State to do business in New York as required by New York Business Corporation Law § 1301(a) ("A foreign corporation shall not do business in this state until it has been authorized to do so as provided in this article. A foreign corporation may be authorized to do in this state any business which may be done lawfully in this state by a domestic corporation, to the extent that it is authorized to do such business in the jurisdiction of its incorporation, but no other business.").

221.    GP Services LLC has not applied for and has not received a Food Service Establishment general license from the Department of Health and Mental Hygiene ("DoHMH").

222.    All establishments in New York City that serve or distribute food must have a Food Service Establishment license.

223.    Hotels such as Gramercy Park Hotel must have a kitchen and full restaurant to be eligible for a Hotel Liquor License issued by the NYSLA.

224.    GPH Services LLC cannot lawfully sell or otherwise provide food because it does not have a license as required under New York law.

225.    Food is sold, served and consumed in the bars located inside the hotel (*i.e.*, Rose Bar and Jade Bar).

226.    GP Services LLC has never applied for nor received permits from the Fire Department to operate a business at 2 Lexington Avenue, New York, New York including the bars in Gramercy Park Hotel.

227.    To operate a bar inside Gramercy Park Hotel, GP Services LLC is required to have an S-95 permit (Supervision of Fire Alarm Systems and other Related Systems) and a F-03 permit (Indoor Place of Assembly Safety Personnel) as well as an Open Flame Permit for the candles used throughout the bars.[27]

228.    Defendant GP Services LLC has never applied for a liquor license from the NYSLA.

229.    Defendant GP Services LLC has never been named on any application for a liquor license submitted by GPH Management LLC or any entity associated with the building at 2 Lexington Avenue, New York, New York 10022.

230.    GP Services LLC cannot lawfully engage in selling or serving liquor, beer and wine because it does not have a liquor license as required by New York law.

231.    It is illegal for GP Services LLC to avail itself of GPH Management's liquor license, as Alcoholic Beverage Control Law § 111 provides that a liquor license "shall be available only to the person therein specified, and only for the premises licensed."

232.    It is illegal to allow an entity or person not disclosed as a principal of the licensee and then approved by the State Liquor Authority to use or avail themselves of the license.

233.    Failure to have the transfer approved by the State Liquor Authority is also an availing.

234.    Availing is considered one of the most serious violations of the Alcoholic Beverage Control Law, because it undermines the entire licensing process and constitutes a danger to the public.

235.    The State Liquor Authority Handbook for Retail Licensees states: "Your license has been issued either to you individually, or as a principal in a partnership, corporation or limited liability company. You may not allow anyone but the entity named on the license and the principals disclosed to the SLA in the application to use the license without the SLA's approval. You cannot allow any person, other than the principals disclosed to the SLA, to exercise control over or profit from the sale of alcoholic beverages in your licensed premises."[28]

236.    Defendant Aby Rosen is aware of the legal requirements for obtaining a liquor license under New York state law as Aby Rosen has applied for and received nine such licenses and, on several of these licenses, submitted renewals as required every two years.

237.    Indeed, Aby Rosen has received the same type of liquor license that he obtained for GPH Management LLC for Gramercy Park Hotel for the Paramount Hotel (license # 1152767) and 11 Howard (license # 1279933).

238.    The allegation that GP Services is a shell corporation used by RFR Holding LLC and Defendant Aby Rosen as a means to commit fraud and other wrongful acts including those described in this Complaint that have been committed against Plaintiff and other employees will likely have evidentiary support after a reasonable opportunity for discovery.

### DEFENDANTS' UNLAWFUL ACTS RELATED TO FORCED TIP SHARING

239.    Defendants did not ***require*** any bartender or barback to contribute tips to any other person or to the "bar," as stated Sebastien Lefavre's email described above, whether it be through tip sharing or tip pooling.

240.    Defendants only required the Cocktail Servers to distribute their tips. Such tips were required to be distributed to the bar and employees who primarily worked in the hotel kitchen

241.    The Cocktail Servers were required to distribute tips on the stated ground that the Cocktail Servers "make too much money" and they "should not be greedy." Management and the bartenders made such comments repeatedly when the Cocktail Servers asked about the policy or otherwise challenged it as outside of industry standard.

242.    The Shift 1 Waitress was required to give 20% of her tips to the Jade Bar bartender and 7% tip to employees who worked primarily in the hotel kitchen area and were unlawfully categorized as "bussers" given the actual work performed.

243.    The Shift 2, Shift 3 and swing-shift waitresses were required to give 20% of tips to the Rose Bar bartenders as well as 15-25% to the bussers who primarily worked in the hotel kitchen.

244.    The employer-mandated tip sharing scheme imposed on Plaintiff and other waitresses is not customary as is demonstrated by the fact that Goldbar and et al., two bars with similar customers and similar type of staff, using a "house pool."

245.    The employer-mandated tip-sharing scheme imposed on Plaintiff and other waitresses and the reasons given for it are not reasonable and therefore unlawful.

246.    Defendants did not establish, maintain, and preserve records as required by law, or did not make any such records available to Plaintiff or other participants in the mandated tip sharing scheme.   Such records were to include: (1) a daily log of the tips collected by each employee on each shift, whether in cash or by credit card; (2) a list of occupations that the employer deemed eligible to receive tips through tip sharing; (3) the shares of tips that each occupation was scheduled to receive from tip sharing; and (4) the amount in tips that each employee received from the tip share by date.

247.    Defendants did not post in a conspicuous place notices about tip appropriations or illegal deduction provisions as required by law.

248.    Defendants did not list "GPH Management LLC" or any other "doing business as" names on any notices as required under NYLL.

249.    Defendants did not state the correct gross wages for any employee on any pay statement as required by NYLL because Defendants did not include cash tips on any records given to Plaintiff or the federal and state governments.

## CLASS ACTION ALLEGATIONS

250.    Plaintiff seeks relief in her individual capacity and as a representative of all others who are similarly situated for certain causes of action alleged herein (*i.e.*, causes of action one, two, three, seven, eight and nine).

251.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of all people who worked at Rose Bar and Jade Bar and were paid less than minimum wage under federal or state law or who had GP Services LLC listed as their employer on their pay statements and/or W2 for the six years prior to filing of this Complaint.

252.    Excluded from this Class are Defendants, and any officer, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.

253.    The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiffs asserts on information and belief that the Class includes more than 50 people.

254.    **Commonality**. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

> a.    Whether RFR Holding LLC, GPH Partners LLC, GPH Management LLC, or GP Services LLC willfully filed fraudulent information return with respect to payments purported to be made to employees working at Rose Bar and Jade Bar in Gramercy Park Hotel.
>
> b.    Whether Defendants gave proper notice to the Class that they would be paid a reduced wage because Defendants intended to use their tips to satisfy their minimum wage obligations or otherwise inform the employees of the provisions of 29 U.S.C. § 203(m);
>
> c.    Whether Defendants unlawfully applied a tip credit under 29 U.S.C. § 203(m) because federal law only permits tip pooling if a tip credit is taken;
>
> d.    Whether Defendants gave proper written notices as required by 12 N.Y.C.R.R. § 146-2.2;
>
> e.    Whether Defendants failed to provide Plaintiff and other employees with written notice containing the name of the employees' employer and any "doing business as" names as required by NYLL §195(1); and

f.      Whether Defendants failed to provide Plaintiff and other employees with written notice containing the name of the employer and any "doing business as" names as required by NYLL §195(3);

255.    All members of the proposed Classes are readily ascertainable.

256.    **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class members because Plaintiff, like that of every other class member, was harmed by Defendants unlawfully applied a tip credit to their wage as well as failure to comply with NYLL §195(1) and NYLL §195(3).

257.    **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions and FLSA claims.

258.    **Superiority of Class Action**. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

259.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants acted or has refused to act on grounds generally applicable to the class.

260.    Pursuant to Fed. R. Civ. P. 23(c)(4), Plaintiff and the class seek certification of particular claims and issues.

## PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

261.    Based on the allegations in this Complaint, Plaintiff brings the following ten claims against Defendants and seeks the remedies specified below.

**AS AND FOR A FIRST CLAIMS AGAINST GP SERVICES LLC**
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of 26 U.S.C. § 7434*

262.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

263.    GP Services LLC willfully filed fraudulent information on Plaintiff's W-2 forms by intentionally excluding cash tips from employees' income beginning in July 2013.

264.    Plaintiff is entitled to actual damages sustained as a proximate result of the filing of the fraudulent information return including any costs attributable to resolving deficiencies as a result of such filing, the costs of the action, and reasonable attorneys' fees as awarded in the Court's discretion.

**AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS**
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of 29 U.S.C. § 206*

265.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

266.    Defendants did not give proper notice to employees that they would be paid a reduced wage because Defendants intended to use their tips to satisfy their minimum wage obligations (i.e., take a "tip credit") or otherwise inform the employees of the provisions of 29 U.S.C. § 203(m).

267.    Defendants unlawfully applied a tip credit to employees' wages and violated the federal minimum wage requirements of 29 U.S.C. § 206 until December 30, 2016, because the actual pay was below federal minimum wage.

268.   Defendants' failure to give proper notice and the subsequent violations of the federal minimum wage requirement were willful as the term is defined 29 U.S.C. § 255.

### AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of 29 U.S.C. § 206*

269.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

270.   29 U.S.C. § 203(m) only allows employers to apply a tip credit if they require tip pooling.

271.   Defendants mandated tip sharing from the Cocktail Servers at Rose Bar and Jade Bar rather than tip pooling by all employees receiving tips.

272.   Because Defendants did not mandate tip pooling, Defendants unlawfully applied a tip credit to Plaintiff and employees similarly situation and thereby violated the federal minimum wage requirements of 29 U.S.C. § 206 for three years prior to filing this Complaint until December 30, 2016.

273.   Defendants' unlawful application of a tip credit and subsequent violations of the federal minimum wage requirement were willful as the term is defined 29 U.S.C. § 255.

### AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf)*

*Violation of 29 U.S.C. § 206*

274.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

275.   Plaintiff repeatedly worked Shift 1 as described above.

276.    On each day that Plaintiff worked Shift 1, Plaintiff or the other waitress spent substantial time doing non-tipped work.

277.    Defendants unlawfully applied a tip credit to the non-tipped work for this period of time and violated 29 U.S.C. § 206 until December 30, 2016, by failing to pay the federal minimum wage.

278.    Defendants' unlawful application of a tip credit and subsequent violations of the federal minimum wage requirement were willful as the term is defined 29 U.S.C. § 255.

### AS AND FOR A FIFTH CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf)*

*Violation of NYLL § 652*

279.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

280.    Plaintiff repeatedly worked Shift 1 as described above.

281.    On each day Plaintiff worked Shift 1, she spent more than 20 percent of her shift doing non-tipped work.

282.    Defendants unlawfully applied a tip credit to the wages of Plaintiff in violation of 12 N.Y.C.R.R. § 146-2.2 and thereby violated NYLL § 652 by failing to pay minimum wage as required by the state of New York.

### AS AND FOR A SIXTH CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of NYLL § 652*

283.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

284.    Defendants did not give proper written notices as required by 12 N.Y.C.R.R. § 146-2.2 and therefore unlawfully applied a tip credit to employees' wages and violated state minimum wage requirements by paying under minimum wage as required by New York.

### AS AND FOR A SEVENTH CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of NYLL §195(1)*

285.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

286.    Defendants failed to provide Plaintiff and other employees with written notice containing *inter alia* the name of the employer and any "doing business as" names used by the employer including GPH Management LLC, the company that owned the liquor license for Gramercy Park Hotel operating under the trade names Rose Bar and Jade Bar, the physical address of the employer's main office or principal place of business, and a mailing address if different, and the telephone number of the employer

287.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees for such violations.

### AS AND FOR A EIGHTH CLAIM AGAINST DEFENDANTS
*(by Plaintiff on her own behalf and on behalf of all employees similarly situated)*

*Violation of NYLL §195(3)*

288.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

289.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement including, *inter alia*, the name of employer including GPH Management LLC

and any "doing business as" names used by the employer, address and phone number of such employer as required by NYLL 195(3).

290.   Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## AS AND FOR A NINTH OF ACTION AGAINST DEFENDANTS
*(by Plaintiff on her own behalf)*

*Violation of NYLL § 196-d*

291.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

292.   Defendants required Plaintiff to contribute a percentage of her tips to other employees that was not customary.

293.   Defendants required Plaintiff to contribute a percentage of her tips to other employees that was not reasonable.

294.   Defendants thereby violated Section 196-d of NYLL.

## AS AND FOR A TENTH OF ACTION AGAINST DEFENDANTS
*(by Plaintiff on her own behalf)*
*Violation of NYLL § 196-d*

295.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

296.   Defendants required Plaintiff to give her tips to employees whose primary duties were non-tipped duties and were ineligible to receive tips through employer-mandated tip sharing.

297.   Defendants thereby violated Section 196-d of NYLL.

**WHEREFORE**, Plaintiff respectfully request that this Court enter a judgment providing the following relief:

a) Certifying the class for causes of action one, two, three, six, seven and eight in accordance with Rule 23 of the Federal Rules of Civil Procedure;

b) Designating Plaintiff as Class Representatives;

c) Designating David Kasell and Brian Lehman as Class Counsel;

d) Entering declaratory judgment that the conduct and practices complained of herein are and were unlawful under the IRC, FLSA and NYLL;

e) Granting judgment in favor of Plaintiff and the Class, and against Defendants;

f) Awarding an amount equal to the greater of $5,000 or the sum of— (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees under 26 U.S.C. § 7434(b) as well as awarding all available compensatory damages to Plaintiff and the Class, including, *inter alia*, all unpaid wages, misappropriated tips, and liquidated damages under federal and state law;

g) Awarding five thousand dollars ($5,000.00) to Plaintiff and the Class for Defendants' failure to provide notice detailing rates of pay and payday and five thousand dollars ($5,000.00) to Plaintiff and the Class for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, employee's gross wages, any deductions made from employee's gross wages, any allowances claimed as part of the minimum wage, and the employee's net wages for each pay day;

h) Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

i) Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages;

j) Awarding an automatic increase in the judgment that if any amounts of the damages are unpaid within ninety days of the expiration of the time to appeal by fifteen percent pursuant to NYLL § 198(4);

k) piercing the corporate veil of corporate entities as means of imposing liability on the dominating corporate entity as well Defendant Aby Rosen; and

l) granting other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: April 22, 2019

Respectfully submitted,

/s/ *Brian Lehman*
Brian Lehman
Lehman LG LLC
244 5th Ave., B258
New York, New York 10001
(724) 453-4626
*Counsel for Plaintiff Allison Ullo*

## ENDNOTES TO AMENDED COMPLAINT

[1] https://rfr.com/about-rfr/rfr-hotel-group/

[2] https://tmng-al.uspto.gov/resting2/api/img/77221091/large

[3]

http://tsdr.uspto.gov/documentviewer?caseId=sn77221091&docId=SPE20180725161733#docIndex=6&page=1

[4]

http://tsdr.uspto.gov/documentviewer?caseId=sn77221091&docId=SPE20180725161733#docIndex=8&page=5

[5] https://rfr.com/about-rfr/executive-team/

[6]

http://tsdr.uspto.gov/documentviewer?caseId=sn77221091&docId=SPE20180725161733#docIndex=5&page=1

[7]

http://tsdr.uspto.gov/documentviewer?caseId=sn77221091&docId=SPE20180725161733#docIndex=2&page=1

[8] https://twitter.com/GPHhotel?lang=en

[9] https://rfr.com/about-rfr/executive-team/

[10] https://lcr-pjr.doleta.gov/index.cfm?event=ehLCJRExternal.dspCert&doc_id=3&visa_class_id=6&id=786088

[11] https://rfr.com/about-rfr/rfr-profile/

[12] https://rfr.com/about-rfr/executive-team/

[13] https://rfr.com/about-rfr/art-real-estate/ &
https://rfr.com/rfrspace/wp-content/uploads/sites/2/2014/10/RFR_285M_Brochure_2016_V10.pdf

[14] https://rfr.com/all-assets/ & https://rfr.com/properties/property-type/hospitality/

[15] https://rfr.com/about-rfr/rfr-hotel-group/

[16] https://rfr.com/properties/property-type/office/?milestones

[17] https://rfr.com/properties/property/gramercy-park-hotel/?hospitality

[18] https://rfr.com/properties/property/gramercy-park-hotel/?hospitality

[19] https://rfr.com/properties/property/gramercy-park-hotel/?hospitality

[20] https://rfr.com/about-rfr/executive-team/

[21] https://rfr.com/contact-us/

[22] https://rfr.com/properties/property/gramercy-park-hotel/?hospitality

[23] http://www.gramercyparkhotel.com/hotel/history

[24] http://www.gramercyparkhotel.com/rooms/amenities

[25] http://www.gramercyparkhotel.com/nightlife

[26] https://www.nytimes.com/2006/11/05/style/05iht-design6.3395890.html?_r=0

[27] https://www1.nyc.gov/site/fdny/business/all-certifications/per-openflames.page

[28] Available at https://www.sla.ny.gov/system/files/StateLiquorAuthority-RetailLicenseesHandbook.pdf

*~All counsel of record*
*served by CM/ECF~*